## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ARTHUR BRIAN BOUDIN,** | ) | |
| **Individually and on behalf of all** | ) | |
| **similarly situated individuals,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) **CASE NUMBER:  07-18** | |
| | ) | |
| **ATM HOLDINGS, INC., D/B/A** | ) | **Class Action** |
| **ATM CORPORATION of AMERICA,** | ) | |
| | ) | **Jury Trial Demanded** |
| **Defendant.** | ) | |

## CLASS ACTION COMPLAINT

**NOW COMES** Plaintiff, **Arthur Brian Boudin**, individually and on behalf of all similarly situated individuals, and for complaint against the Defendant, asserts as follows:

### I. INTRODUCTION

1.     This action is brought on behalf of residential mortgage borrowers who have received settlement services from Defendant in connection with the closing of their loans. In connection with these closings Plaintiff and the class members were charged and paid fees for certain settlement services. These services were provided as a condition to a federally related home loan. The defendant is in the business of providing settlement services as that term is defined by 12 U.S.C. § 2602(3) and 24 C.F.R. § 3500.2(b).

2.     Defendant has engaged in a uniform, systematic pattern and practice of charging borrowers excessive and unearned fees for settlement services in violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*

3.      Under RESPA related regulations and policy statements and other pronouncements by the Department of Housing and Urban Development (HUD), fees for settlement services are unearned when:

> one settlement service provider marks up the cost of the services performed or goods provided by another settlement service provider without providing actual, necessary, and distinct services, goods, or facilities to justify the additional charge; or one settlement service provider charges the consumer a fee where no, nominal, or duplicative work is done, or the fee is in excess of the reasonable value of goods or facilities provided or the services actually performed.
>
> HUD Statement of Policy 2001-1, Part C, § (8)(b), Unearned Fees (24 C.F.R. Part 3500) ("HUD Statement of Policy 2001-1 ").

4.      HUD further clarified its position regarding the mark up of settlement services on its website at, http://www.hud.gov/offices/hsg/sfh/res/resindus.cfm, where it states:

**Fee splitting**

24. Can a lender charge a borrower a fee for sending documents via courier and disclose it on the HUD-1 where in fact the borrower stops by the lender's office and picks up the documents instead?

No, because the charge for the courier service does not represent a charge for work actually performed which can be imposed on the borrower.

25. Can a lender collect from the borrower an appraisal fee of $200, listing the fee as such on the HUD-1, yet pay an independent appraiser $175 and collect the $25 difference?

No, the lender may only collect $175 as the actual charge. It is a violation of Section 8 (b) for any person to accept a split of a fee where services are not performed.

5.      In spite of HUD's guidance, which could not be clearer, Defendant has closed hundreds of loans and on information and belief all or substantially all of these transactions

included unlawful, excessive and unearned fees for settlement services and/or filing fees. Accordingly, Plaintiffs are pursuing this case as a class action.

## II.  THE PARTIES

6.     Plaintiff Arthur Brian Boudin resides at 11237 Lark Ave., Fairhope AL 36532.

7.     Defendant  is a Pennsylvania corporation that engages in the closing of mortgage loan transactions throughout Alabama and the country.

8.     Plaintiff's claims are asserted with respect to alleged violations by Defendant and/or any of its predecessors, subsidiaries, divisions and entities for which Defendant has successor liability.

## III.  JURISDICTION AND VENUE

9.     Plaintiff seeks relief under RESPA and, therefore, federal question jurisdiction is appropriate pursuant to 28 U.S.C. § 1331.

10.     Personal jurisdiction and venue in this district are proper under 28 U.S.C. §§ 1381(b) and 2614, because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this district, in that the real property involved in Plaintiff's mortgage loan transaction is located in this district.

## IV.  BACKGROUND

## RESPA  - AN OVERVIEW

11.     In the early 1970's, Congress became concerned about predatory lending practices in the housing industry, and in 1974 enacted a remedial consumer protection statue, RESPA, "to ensure that consumers throughout the Nation are . . .  protected from unnecessarily

high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

12.     As Congress has indicated, the purpose of RESPA is, *inter alia*, "to effect certain changes in the settlement process for residential real estate that will result . . .  in the elimination of . . . fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(a) and (b).

13.     Congress' desire to eliminate excessive settlement fees is manifested in Section 8 of RESPA, which prohibits kickbacks and fee-splits related to real estate settlement services as follows:

> ### § 2607 Prohibition Against Kickbacks and Unearned Fees
> a)      <u>Business Referrals</u>.   No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
> b)      <u>Splitting Charges.</u>    No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

14.     The United States Department of Housing and Urban Development ("HUD") has issued implementing regulations for RESPA which define "settlement service" as "any service provided in connection with a prospective or actual settlement, including . . . [the] rendering of credit reports and appraisals." 24 C.F.R. Part 3500.2.

**<u>Defendant's Violation of RESPA</u>**

15.     As part of the closing and settlement process for a residential mortgage loan, Defendant, is requested by the lenders as a matter of course to perform certain settlement services with respect to each borrower.

16.     Defendant as a matter of course obtains settlement services from third party providers.  It states on its web site "ATM was established on January 11, 1993, as a nationwide vendor management company whose primary focus was to provide clients with a single-point outsource management company for all settlement services needs." (emphasis added) See: https://www.atmprof.com/corporate/html/company%20history.html

17.     On the HUD 1 settlement statement, Defendant shows charges to the borrower for these settlement services as part of the borrower's closing costs and collects the said charges from borrowers.

18.     The charges shown on the HUD-1 and paid by the borrowers are inflated, duplicative and/or marked up by the defendant which retains the difference in charges as unearned fees.

19.     Upon information and belief, these settlement services are provided to Defendant by the third party providers and Defendant, does not perform any additional services related to such settlement services obtained and, accordingly, the additional fees being charged by Defendant for said services are for "other than for services actually performed."

20.     Hence, Defendant charged Plaintiffs and the Class excessive and unearned fees for settlement services.

21.     Defendant either violated RESPA intentionally or was negligent in the training and supervision of its agents and/or employees resulting in the violations complained of herein.

22.     Defendant's acceptance of excessive and unearned fees from its customers is in direct violation of RESPA and, depending upon the precise payment arrangements between Defendant and the third party providers, Defendant's conduct represents either an illegal

"markup/fee split" or an illegal "kickback" under RESPA. Plaintiffs, accordingly, plead in the alternative.

23.     As part of the closing and settlement process for a residential mortgage loan Defendant as a matter of course, marks up the recording fees charged to its customers and retains the difference between the actual fees charges by state recording officials as additional unearned fees. For example in the named plaintiff's transaction the actual fee paid to the Baldwin County Probate Court for the recording of his mortgage was only $58.00 and he was charged $120.00 as indicated on his HUD-1 settlement.

24.     These fees are often indicated to be paid to "clerk of the court". On information and belief this fee is "split" between Defendant and the appropriate governmental authority in charge and responsible for the recordation of the plaintiff's mortgage. The portion of the fee retained by Defendant is an improper markup or is a kick back made in connection with the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for service actually performed.

25.     Defendant's acceptance of and concealment of excessive and unearned fees from consumers for the recordation of their mortgages is in direct violation of RESPA and, depending on the precise payment arrangements between Defendant and the governmental authorities represents either an illegal markup/fee split or an illegal kick back under RESPA. Plaintiffs, accordingly plead in the alternative.

26.     Defendant continues to charge unearned fees for settlement services in connection with its real estate settlement services and, upon information and belief, have no plans to discontinue accepting such charges.

27.     Plaintiff Arthur Brian Boudin obtained a home mortgage loan from Ameriquest Mortgage Company, which closed on or about October 6, 2005. As indicated on Mr. Boudin's HUD-1 Settlement Statement, Defendant charged and collected from Mr. Boudin unearned fees for settlement services and recording fees.

28.     As set forth above, various settlement services were actually obtained from third party providers and the actual cost was marked up and charged to Plaintiff. Also the charges for recording fees were inflated and marked up. The higher charges imposed upon Plaintiff by Defendant represented mark-ups of the true cost for said services and recording fees and provided excess and illegal profits to Defendant.

## V. <u>CLASS ACTION ALLEGATIONS</u>

29.     This is a class action filed on behalf of all residential borrowers, nationally, who received settlement services from Defendant (including its predecessors, subsidiaries, divisions, and entities for which Defendant has successor liability). Upon information and belief, the scope of this class definition, including its temporal scope, will be further refined after discovery of Defendant's books and records.

30.     The identities of the class members are readily identifiable through computer records and paper records, regularly maintained in Defendant's course of business.

31.     The Class is so numerous as to make it impracticable to bring all members of the Class before the Court. It is believed, based upon Defendant's representations in public records, that the Class includes thousands of members. In some instances, such persons may be unaware that claims exist on their behalf. To the extent that Class members have knowledge of their claims, their damages are in such amounts that when taken individually, they may be too small to justify the expense of a separate lawsuit.

7

32.     The representative Plaintiffs' claims are typical of, if not identical to, the claims of the Class. Plaintiff received settlement services from Defendant, which included the same excessive and unearned fees imposed upon each and every Class member.

33.     The representative Plaintiff will fairly and adequately represent the members of the Class and has no interest which is antagonistic to the claims of the Class. Plaintiff is aware that he cannot settle this action without Court approval. Plaintiff's interest in this action is antagonistic to the interest of the Defendant, and he will vigorously pursue the claim of the Class.

34.     The representative Plaintiff has retained counsel who are competent and experienced in consumer class action litigation, and have successfully represented consumers in complex class actions. Counsel have agreed to handle this case on a contingent basis, with their compensation for professional services only as awarded by the Court.

35.     Common questions of law and fact impact the rights of each member of the Class and a common remedy by way of permissible damages and declaratory relief is sought for the Class.

36.     There are numerous and substantial questions of law and fact common to all members of the Class which will control in this litigation and which will predominate over any so-called individual issues. These common questions of law and fact include:

> a)     Did Defendant mark-up the costs of settlement services without themselves providing actual, necessary and distinct services and/or did Defendants otherwise engage in a "fee split," in violation of RESPA?
>
> b)     Did Defendants engage in a "kickback" scheme, resulting in excessive settlement charges to the Class, in violation of RESPA?
>
> c)     What measure of damages is appropriate?
>
> d)     What declaratory or injunctive relief is appropriate?

8

37.    A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of the representative Plaintiff and the class are identical and will require evidentiary proof of the same kind and application of the same law.

38.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually. Trial of Plaintiffs' claims is manageable. Unless a class is certified, Defendants will retain excessive and unearned fees improperly accepted from class members.

39.    Unless a class-wide injunction is issued, Defendant may continue to commit violations against residential mortgage borrowers.

40.    The representative Plaintiff will seek to identify all class members through discovery as may be appropriate and will provide to the class such notice of this action as the Court may direct.

41.    Defendant is in sole possession of the information regarding the cost of the settlement services it was charging borrowers, and actively misled Plaintiffs and the class, by disseminating fraudulent HUD-1 settlement statements that were calculated to deceive Plaintiffs and the class regarding: 1) who was providing the services related to the abstracts and title searches; 2) how the fee for those services was truly being allocated; 3) to whom payments for recordation of mortgages was being made; and 4) in what amounts.

42.    The fact that the charges imposed on Plaintiffs for settlement services were marked up, was unknown to, and essentially unknowable by, Plaintiffs and the proposed class members because Defendant's costs for providing or obtaining the services were not available to

9

or discoverable by Plaintiffs and the proposed class members, and Defendant actively deceived Plaintiffs and the class about whom was providing these services and the fact that borrowers who closed loans using Defendant were being overcharged.   The unknown and inherently unknowable nature of Defendant's unlawful charges did not give Plaintiff any reason to inquire, investigate or discover Defendant's wrongdoing. As a practical reality, it was impossible for persons closing on residential loans to detect Defendant's unlawful violations.

43.     Defendant's scheme and misconduct was, by design and in practice, inherently self-concealing. Defendant knew Plaintiffs and the proposed class members could not determine whether or not the fees they were charged were marked up or unreasonably high.

44.     Plaintiff and the proposed class members have acted with due diligence with respect to their rights. The facts that support Plaintiff's causes of action were not knowable to Plaintiff or proposed class members until shortly before the filing of the Complaint in this action.

45.     Specifically, Plaintiff reviewed all relevant loan documents and actively participated in all aspects of the loan transaction at issue but nonetheless did not discover, and could not reasonably have been expected to discover, that some of the information set forth in the HUD-1's relating to fees paid to the clerk of court and abstract or title search charges was false and misleading.

### TOLLING AND CLASS ACTION
### TOLLING OF LIMITATIONS PERIOD

46.     Defendant knowingly and actively misled the Plaintiff and the Members of the Plaintiff's Class from pursuing their claims by, among other things:

(a)     Engaging in a scheme that was by its nature and design "self-concealing";

(b)      Knowingly and actively mischaracterizing and misrepresenting, inter alia, actual amounts paid for abstracts, title search, title examinations, notary fees, endorsement fees, title insurance and recording charges such that such non-bona fide and illegal charges were wrongfully excluded from the Finance Charges and Amount Financed used to calculate the Annual Percentage Rate (APR), thereby materially misrepresenting these disclosures as well materially understating the APR;

(c)      Knowingly and actively misrepresenting the Finance Charges, the Amount Financed and APRs on the TILA Disclosure Statements provided to Plaintiff and all Class Members by, among other things, failing to include in its calculations all of the required disclosures (described in sub-paragraph (b) above) that were not bona fide, reasonable, lawful and/or not paid to true third parties.

46.      Plaintiff and class members exercised reasonable consumer diligence during their loan transactions and dealings with Defendant and in reviewing of their loan documentation, they could not have, nor have been reasonably expected to, uncover the true facts.

## COUNT I

## VIOLATIONS OF RESPA  - SECTION 8(b)

47.      Plaintiff realleges the allegations of all of the relevant paragraphs above by reference as if set out here in full.

48.      Plaintiff's loan, as well as the loans of the class members, are federally related mortgage loans within the meaning of RESPA.

49.      Defendant violated RESPA, Section 8(b), 12 U.S.C. § 2607(b), and related federal regulations and interpretations by accepting and/or giving a charge made or received for a real estate settlement service other than for services actually rendered.

50.     HUD has interpreted Section 8(b) as prohibiting "unearned fees" when (among other things) "one settlement service provider marks up the costs of the services performed or goods provided by another settlement service provider without providing actual, necessary, and distinct services, goods, or facilities to justify the additional charge." HUD Statement of Policy 2002-1, 66 Fed. Reg. 53, 052, 53, 407-58 (Oct. 18, 2001) (the "Policy Statement").

51.     Plaintiff and other class members are persons "charged for the settlement service involved in the violation," and each such Plaintiff and other class members are entitled to damages from Defendant "in an amount equal to three times the amount of any charge paid for such settlement services." RESPA Section 8(b)(d)(2), 12 U.S.C. § 2607(d)(2).

52.     Plaintiff and other proposed class members paid fees to Defendant under a mistake of fact resulting from Defendant's failure to disclose that their fees for settlement services were excessive and unearned, as set forth above.

## COUNT II

## VIOLATIONS OF RESPA - SECTION 8(a)

53.     Plaintiff realleges the allegations of all of the relevant paragraphs above by reference as if set out here in full.

54.     Defendant violated RESPA, Section 8(a), 12 U.S.C. § 2607(a), and related federal regulations and interpretations by accepting and/or giving a fee, kickback, or thing of value in exchange for the referral of real estate settlement services.

55.     Plaintiffs and other class members are persons "charged for the settlement service involved in the violation," and each such Plaintiff and other class members are entitled to damages from Defendant "in an amount equal to three times the amount of any charge paid for such settlement services." RESPA Section 8(b)(d)(2), 12 U.S.C. § 2607(d)(2).

**WHEREFORE**, on all asserted causes of action against Defendant, Plaintiffs and the class respectfully request judgment against Defendant as follows:

A)      For an order certifying this action may be maintained as a class action, as above defined, under Fed.R.Civ.P. 23(a) and 23(b)(3);

B)      For an order appointing Plaintiffs as representatives of the class;

C)      For an order appointing the undersigned counsel as class counsel pursuant to Fed.R.Civ.P. 23;

D)      For an order directing that reasonable notice of the class action be provided to all members of the class at the appropriate time after discovery and dispositive motions have been resolved;

E)      For violating RESPA, an order and judgment finding that the Defendant is liable as a matter of law to each member of the class for treble damages;

F)      For declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

G)      For reasonable attorneys' fees as provided by law and statute;

H)      For pre-and-post judgment interest as provided by law in an amount according to proof at trial;

I)       For an award of costs and expenses incurred in this action; and

J)       For such other relief as the court may deem just and proper.


\s Earl P. Underwood, Jr.
EARL P. UNDERWOOD, JR. (UNDEE6591)
Attorney for Plaintiffs
Post Office Box 969
Fairhope, Alabama 36533
Telephone:      (251)   990-5558
Facsimile:      (251)   990-0626
E-Mail:         epunderwood@alalaw.com

13

## DEMAND FOR JURY TRIAL

**PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

\s Earl P. Underwood, Jr.
EARL P. UNDERWOOD, JR.