IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ARTHUR BRIAN BOUDIN, | * |
| Plaintiff, | * |
| v. | *   Case Number 07-18 |
| ATM HOLDINGS, INC., d/b/a ATM CORPORATION of AMERICA, | * |
| | * |
| Defendant. | |

**RESPONSE TO MOTION TO DISMISS OF DEFENDANT ATM HOLDINGS**

COMES NOW Plaintiff and submit the following Memorandum in response and opposition to the Motion to Dismiss filed by Defendant ATM Holdings, Inc., d/b/a ATM Corporation of America ("ATM"):

**RELEVANT FACT ALLEGATIONS**

On or about October 6, 2005, Plaintiff obtained a real estate mortgage loan with Ameriquest Mortgage Company. ATM acted as the closing agent on the loan. Complaint ("Comp."), at ¶ 27. As part of the closing Plaintiff was charged various fees and charges as part of the closing costs. These fees included a charge for "recording fee" for recording of the "mortgage" of $120. Comp., ¶23. In reality, and as reflected in the probate records, the actual filing fee paid to record the Mortgage was $58. *Id.* Plaintiff was also charged a "closing fee" paid to ATM of $450; a "abstract or title search" fee paid to ATM of $265; a "document preparation" fee of $200 paid to ATM; and a "notary fee" of $400 paid to ATM.

ATM is a Pennsylvania corporation that serves as settlement/closing agent for nationwide lenders, including Ameriquest. ATM engages third party vendors to perform many of the tasks

associated with the closing and they imposed a charge on borrowers in excess of what is paid to the vendor providing the service. ATM does not perform any additional services related to those services and, therefore, is collecting sums "other than for services actually performed" in direct violation of the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2607(b). Comp. at ¶¶ 16-28.

The fees paid by Plaintiffs in connection with his loan were charges imposed in connection with the providing of a real estate settlement service within the meaning of 12 U.S.C. § § 2602(3), 2607(b) and 24 C.F.R. § 3500.2(b). Comp. at ¶ 1.

## LEGAL ARGUMENT

**A.    The Mark-up[1] of a Settlement Service in a Transaction Covered by RESPA is an Actionable Violation.**

RESPA was enacted in 1974 because Congress became concerned about predatory lending practices in the housing industry. A remedial consumer protection statue, the purpose of RESPA is "to ensure that consumers throughout the Nation are . . . protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a).

As Congress has stated, "[i]t is the purpose of [RESPA ] to effect certain changes in the settlement process for residential real estate that will result . . . in the elimination of . . . fees that tend to increase unnecessarily the costs of certain settlement services." 12 U.S.C. § 2601(b).

Congress' desire to eliminate excessive settlement fees is manifested in Section 8 of RESPA,

---

[1]Markup is defined as: An amount originally added to cost. Usually expressed as a percentage of selling price. Also refers to an increase above an originally established retail price. Blacks Law Dictionary Abridged 6th Ed., 8th Reprint 1998

which prohibits kickbacks and fee-splits related to real estate settlement services:

> **Prohibition Against Kickbacks and Unearned Fees**
>
> a)      Business Referrals.
> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
>
> b)      Splitting Charges.
> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607.

The Eleventh Circuit has described the congress's intent behind these provisions of RESPA as follows:

> One of the abusive practices that Congress sought to eliminate through the enactment of RESPA was the payment of referral fees, kickbacks, and *other unearned fees*. S.Rep. No. 93-866 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6546, 6551. Of particular interest to Congress was the payment by settlement service providers of commissions or fees in exchange for the referral of a consumer's business. *Id.* Congress similarly wished to eliminate *fees for which no service was performed* and no goods were furnished. *Id.* ***These fees are passed along to consumers and increase settlement costs without providing any benefits.***

*Sosa v. Chase Manhattan Mortgage Corp.*, 348 F.3d 979, 981 (11th Cir 2003)(emphasis added).

Congress designated HUD as the implementing agency for RESPA. 12 U.S.C. § 2617. The implementing RESPA regulations promulgated by HUD are codified at 24 U.S.C. § 3500 (Reg. X.). Section 3500.14( c), addressing the Section 8(b) states as follows:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed. ***A charge by a person for which no or nominal***

> ***services are performed or for which duplicative fees are charged is an unearned fee and violates this section.*** The source of the payment does not determine whether or not a service is compensable. Nor may the prohibitions of this Part be avoided by creating an arrangement wherein the purchaser of services splits the fee.

24 C.F.R. § 3500.14( c). (Emphasis added).

In 2001 HUD issued a comprehensive guidance which, among other things, clarified the activities that constitute violations of Section 8(b). HUD Statement of Policy 2001-1, Part C, § (8)(b), Unearned Fees (24 C.F.R. Part 3500), 66 Fed. Reg. 53052 ("2001 Policy Statement"), attached hereto as Exhibit "A." This guidance is entitled to *Chevron* deference. *Heimmermann v. First Union Mortgage Corp.*, 305 F.3d 1257, 1264 (11th Cir.2002). *See also*, *Glover v. Standard Fed. Bank*, 283 F.3d 953, 962-63 (8th Cir. 2002); *Santiago v. GMAC Mortg. Group, Inc.,* 417 F.3d 384, 390 (3d Cir. 2005); *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49 (2d Cir. 2004).

In the 2001 Policy Statement, HUD clarified that Section 8(b) could be violated in at least the following three ways:

(1) Two or more persons split a fee for settlement services, "*any portion of which is unearned*"; or

(2) One settlement service provider marks up the cost of the services performed or goods provided by another settlement service provider without providing additional actual, necessary and distinct services, goods, or facilities to justify the additional charge; or

(3) One settlement service provider charges a fee were no, nominal or duplicative work is done or the fee is in excess of the reasonable value of goods or services provided.

66 Fed. Reg. at 53057.

ATM's motion is due to be denied because the Complaint clearly alleges a claim for violations of Section 8 pursuant to the plain language of the statute, HUD's interpretation of that language and binding Eleventh Circuit precedent.

B.     **Plaintiff Has Alleged Violations of RESPA Section 8(b)**

The Eleventh Circuit in *Sosa* described the pleading requirements under Section 8(b) as follows:

> To state a claim under the applicable part of subsection 8(b) of RESPA, the borrowers must allege that Chase "accept[ed] any portion, split or percentage of any charge...for the rendering of a real estate settlement service...other than for services actually performed."

348 F.3d at 983, *quoting* 12 U.S.C. § 2607(b)

The Complaint in the case at bar clearly meets this criteria. Plaintiff alleges that services provided in connection with loans closed by ATM were provided by third parties, and that ATM charged Plaintiff amounts in excess of the true costs of those services without providing any additional services. Comp., ¶¶ 16-28. The Complaint also alleges that ATM charged $120 for recording the mortgage when the actual fee paid to Probate Court was $58. Comp. at ¶ 23. The Complaint alleges that by marking up the recording fees and charges for other settlement services performed by others, ATM imposed fees on Plaintiff and other similarly situated borrowers "other than for services actually rendered" in violation of RESPA. Comp., ¶¶ 19, 24 & 49.

ATM, citing *Sosa*, argues that Plaintiffs have not stated a claim under Section 8(b) because Plaintiffs failed to allege that ATM did not provide any service at all. ATM's argument is based on a mischaracterization of the Plaintiff's allegations and of the law. First, ATM incorrectly asserts that in order to state a Section 8(b) claim, the plaintiff must prove that a settlement company provided no service at all. According to ATM, a service provider may accept a portion of a marked up fee, no matter how illegal or excessive, as long as some service was provided. This absurd position is contrary to the plain language of RESPA and the interpretative law, including *Sosa*.

The plain language of Section 8(b) prohibits the acceptance of "any portion" of a charge which is "other than for services actually performed." 12 U.S.C. 2407(b). Thus, the fact that a portion of a fee is attributable to a service provided does not shield a defendant from violating this provision when another "portion" of the fee is "other than for services actually performed." Furthermore, HUD regulations clarify that a prohibited mark up can occur where services are actually provided but where those services are "nominal" or the fees for actual services provided are "duplicative." 24 C.F.R. § 3500.14( c). Thus, the simple fact that a defendant performed *some* service can not defeat liability when that defendant accepted a portion of a fee which can not be justified by the performance of any services. *Sosa*, 348 F.3d at 983. Certainly Congress' desire to eliminate "unnecessarily high settlement charges" and "unearned fees" is not served by ATM twisted interpretation of § 2707 which would allow a provider to charge "sky is the limit" fees no matter how nominal the services actually performed. 12 U.S.C. 2601(a); *Sosa*, 348 F.3d at 981;S.Rep. No. 93-866 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6546, 6551.

Examination of the facts and holding in *Sosa* reveal how little support it gives ATM's position. The complaint in *Sosa* attacked a $50 fee for "courier or messenger." The plaintiffs alleged that this was a violation because Chase retained a portion of the fee rather than remitting the entire fee to the third party performing the service. The Court held that this failed to state a claim under Section 8(b) because the simple retention of the fee by Chase was not violative of the statute. It would be a violation, however, if Chase retained the fee and failed to perform any services for the portion it retained. The *Sosa* Court explained as follows:

> The complaint alleges, and we take as true, that Chase charged borrowers $50 for courier or messenger fees, that Chase paid only a portion of that fee to third-party contractors, and that Chase "created the misimpression" that the fees were entirely

> paid to the third parties. The borrowers have thus contended that Chase accepted a portion of a charge for real estate services. *What is missing is an allegation that the portion of the charge that Chase retained was accepted "other than for services actually performed," i.e., that Chase performed no services that would justify its retention of a portion of the fee.*

348 F.3d at 983 (emphasis added). The Court did not hold, as is argued by ATM, that a services provider may markup a settlement fee as long as *some* service is provided. The court simply held that to state a claim under Section 8(b) there must be an allegation that fee or a portion of fee was retained which is not payment for the providing of a service. *Id.* This allegation appears at least three times in Mr. Boudin's Complaint. Comp., ¶¶ 19, 24 & 49.

The other two cases cited by ATM (in footnote 3 of its brief), *Kruse v. Wells Fargo Home Mortg., Inc.*, 383 F.3d 49 (2d Cir. 2004) and *Santiago v. GMAC Mortg. Group, Inc.*, 417 F.3d 384, 390 (3d Cir. 2005), likewise do not stand for the proposition that a service provider may charge whatever it wants, even an illegal rate, as long as *some* service is provided. Both those cases, like *Sosa*, reaffirm that position taken by HUD that Section 8(b) prohibits the marking up a settlement charge such that a provider is receiving a fee "other than for services rendered." On the other hand, those opinions state that Section 8(b) does not allow for a cause of action for "overcharging", *i.e.*, charging an amount in excess of the "reasonable" value of services provided.

The Second Circuit in *Kruse* addressed two alleged violations: (1) That the lender's underwriting fee violated Section 8(b) because the lender provided that service itself at a cost of $20; over 25 times the amount of the fee charged to plaintiff; and (2) That the lender's charge for "tax service" violated Section 8(b) because that charge exceeded what the lender paid a third party vendor and the lender failed to provide any additional services. The Court held that the first allegation amounted only to a claim for "overcharging" which the Court held was not a cognizable

claim under RESPA. The court held that Section 8(b) does not require a parsing out of what fees are "reasonable" and which ones are "unreasonable" fees. *Id.* at 56.

On the other hand, the *Kruse* court, as in *Sosa*, held that Section 8(b) prohibits the retention of a fee other than for services rendered. If the lender paid the tax service provider less than it charged the borrower and did not perform additional services, that charge was "marked-up" in violation of Section 8(b). *Id.* at 61-62.

> In the Policy Statement, HUD reads section 8(b) to prohibit a "settlement service provider" from "mark[ing]-up the cost of another provider's services without providing additional settlement services." Policy Statement, 66 Fed. Reg. at 53,059. Applying HUD's reading of the statute, we conclude that the plaintiffs sufficiently alleged a cause of action when they asserted in their complaint that "[t]hird-party vendors charge Defendants fees to perform ... services. Without performing any additional services, Defendants then charge borrowers a mark-up of these vendors' fees and pocket the difference as profit." Compl. ¶ 24. The grant of the motion for judgment on the pleadings as to the plaintiffs' mark-ups claim was therefore in error.

*Id.* The allegations in Boudin's Complaint are materially identical to those which the *Kruse* court found actionable.

The Third Circuit in *Santiago v. GMAC Mortg. Group, Inc.*, 417 F.3d 384, 390 (3d Cir. 2005), reached the same result. In *Santiago*, the plaintiff attacked three fees: (1) a $85 "tax service fee"; (2) a $20 "flood certification fee"; and (3) a $250 "funding fee." The district court dismissed the entire claim and the Third Circuit reversed. As in *Sosa* and *Kruse*, the *Santiago* court stated that Section 8(b) prohibited the marking up of a fee such that a charge is accepted other than for services rendered. *Id.* at 389. Therefore, the dismissal of the complaint was in error to the extent that the complaint alleged a mark-up. *Id.* Likewise, it would be error to dismiss Boudin's Complaint.

Like the courts in *Sosa* and *Kruse*, the *Santiago* court refused to recognize a claim under Section 8(b) for charging more than the "reasonable" value of the services rendered.

> To accept Santiago's reading would require dividing charges for services provided into "reasonable" and "unreasonable" portions-that is, the portion for "services rendered" and the portion for "no services rendered." Not only does Section 8(b) not make this distinction, but there is no other language in the body of the statute that instructs how to define the reasonable and unreasonable portions of a charge.

Id. at 387. However, the *Santiago* court endorsed HUD's view that Section 8(b) prohibits the marking up of a settlement fee, *i.e.*, accepting an amount other than for services performed. *Id.* at 389.

Mr. Boudin's claims stand in stark contrast to the "overcharging" claims rejected in *Sosa*, *Santiago* and *Kruse*. The Complaint in this case clearly alleges a "mark-up." The charge is marked up because it exceeds the costs of those services, which are provided by third parties. This is not an overcharge claim. Plaintiff is not challenging the "reasonableness" of these fees, nor does his claim require the Court to determine the reasonableness of the challenged fees. Plaintiff in this case alleges a mark-up in violation of Section 8 because the charge paid for the services exceeds the actual costs of those services, and ATM performed no additional services to earn the marked up fee. Therefore, ATM received fees other than the "services actually performed." 12 U.S.C. § 2607(b).

**C.     Plaintiff's Claims are Not Barred by the Statute of Limitations**

ATM also asserts in its Motion to Dismiss that the Plaintiff's claims are barred by the one-year statute of limitation contained in RESPA. However, the doctrine of equitable tolling applies to the Plaintiff's claims, and Plaintiff has sufficiently plead the facts supporting equitable tolling. Therefore, the claims are not barred by the statute of limitations.

The doctrine of equitable tolling applies to all federal statutes unless the statute states otherwise. *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946); *see also Ellis v. General Motors Acceptance Corporation*, 160 F.3d 703, 706 (11th Cir. 1998). The Eleventh Circuit in *Ellis*

specifically applied equitable tolling to the Truth in Lending Act regulatory scheme. Id.

> Despite TILA's clearly remedial purpose, if we were to read its time limit literally, consumers whose cause of action was fraudulently concealed from them until after a year had passed could not pursue a cause of action under TILA. That would lead to the anomalous result that a statute designed to remediate the effects of fraud would instead reward those perpetrators who concealed their fraud long enough to time-bar their victims' remedy. We cannot believe this was Congress' intent. Rather, in these circumstances we apply the general rule that equitable tolling applies to all federal statutes unless the statute states otherwise.

Id. at 708. "The Eleventh Circuit Court of Appeals, and every other Federal Court of Appeals, has recognized that TILA's statute of limitations is subject to equitable tolling when the violation of TILA is either self concealing or is fraudulently concealed by the defendant." In re Consolidated "Non-Filing Insurance" Fee Litigation, 195 F.R.D. 684, 694, n. 7 (M.D. Ala. 2000).

While the Eleventh Circuit has not specifically addressed equitable tolling in the RESPA context, the analysis as to why the doctrine applies to a TILA allegation is equally applicable to RESPA. Like TILA, RESPA is a remedial statute designed to aid consumers in providing them accurate information as to the true cost of their mortgage loan. The express purposes of RESPA include providing the consumer with "greater and more timely information on the nature and costs of the settlement process," and to eliminate "kickbacks or referral fees that tend to increase unnecessarily the costs of [mortgage loan settlements]." 12 U.S.C. § 2601(a) and (b).

That the application of equitable tolling is consistent with the remedial purposes of RESPA was recognized in by United States District Court for the Southern District of Georgia in Price v. Countrywide Home Loans, Inc., 2005 WL 2354348 (S. D. Ga., September 26, 2005). The court discussed the interplay between the key principals of equitable tolling, fraudulent concealment and due diligence, as follows:

> If want of due diligence by the plaintiff may make it unfair to pursue the defendant, fraudulent conduct on the part of defendant may have prevented the plaintiff from being diligent and may make it unfair to bar appeal to equity because of a mere lapse of time. ... And so this Court long ago adopted as its own the old chancellory rule that where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party". ... This equitable doctrine is read into every federal statute of limitation.

Id. at slip op., p 3. *Quoting Holmberg v. Armbrecht*, 327 U.S. 392, 396-97, (1945) (citation omitted).

The *Price* court also recognized that on a motion to dismiss the moving party bears the burden of demonstrating that the complaint is legally deficient. The moving party must demonstrate that the plaintiff had notice of his claim or had notice sufficient to prompt him to investigate and that had he done so diligently he would have discovered the basis for his claims. The Price Court also recognized that all doubt is resolved in favor of the non-moving party and "[t]his standard is applied with particular stringency when it is claimed that the defendants conduct prevented the plaintiff from discovering his claim prior to the expiration of the limitations." Id.

In most instances, the "issue of when a plaintiff is on 'notice' of his claim is a question of fact and generally whether a plaintiff exercised due diligence is also a question properly reserved for jury determination." Id. The Court further recognized that the plaintiff in *Price* had satisfied his pleading requirements by averring that the HUD-1 statement actively misled him by not disclosing a third-party's identity and its share of the credit reporting fee. *See also Veal v. Crown Auto Dealerships, Inc.*, 2006 WL 435693 (M.D. Fl. February 21, 2006) (allegation sufficient to toll TILA claim where disclosures allegedly inaccurate).

Mr. Boudin has sufficiently plead the necessary facts supporting the application of equitable

11

tolling. Plaintiff alleges ATM knowingly and actively misled him by:

> "(a) Engaging in a scheme that was by its nature and design "self-concealing";
>
> (b) Knowingly and actively mischaracterizing and misrepresenting, inter alia, actual amounts paid for abstracts, title search, title examinations, notary fees, endorsement fees, title insurance and recording charges such that such non-bona fide and illegal charges were wrongfully excluded from the Finance Charges and Amount Financed used to calculate the Annual Percentage Rate (APR), thereby materially misrepresenting these disclosures as well materially understating the APR;
>
> (c) Knowingly and actively misrepresenting the Finance Charges, the Amount Financed and APRs on the TILA Disclosure Statements provided to Plaintiff and all Class Members by, among other things, failing to include in its calculations all of the required disclosures (described in sub-paragraph (b) above) that were not bona fide, reasonable, lawful and/or not paid to true third parties."

Comp., ¶ 46.

Plaintiff further alleges that he exercised reasonable consumer diligence during their loan transactions and dealings with Defendant and in reviewing of their loan documentation, they could not have, nor have been reasonably expected to, uncover the true facts. Comp., ¶ ¶ 46-47. The Complaint also alleges that ATM failed to truthfully disclose the names of the persons who performed the settlement services and received payment for those services. Comp., ¶ ¶ 41 - 45. It should be pointed out that the failure to list the vendors who provided settlement services is a direct violation HUD regulations which require that "the name of the person or firm ultimately receiving the payment (for each settlement service) should be shown" on the Settlement Statement. Reg. X, 24 C.F.R. Part 3500, Appendix A, Section L.

**D.      Plaintiff has Sufficiently Pled a Claim under RESPA Section 8(a)**

It is clear that the plaintiff's complaint in this case states a cause of action for a violation of 12 U.S.C § 2607(a). That section provides as follows:

> (a) Business referrals
> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C § 2607(a). As ATM acknowledges in the third sentence of its brief, the Complaint alleges that ATM received a "kick-back" for "referring" settlement business in violation of § 2607(a)." *See* Comp., ¶ 54. This count rests on the same set of facts as the Section 8(b) claim and Plaintiff makes clear that the Section 8(a) claim is plead in the alternative. Comp., ¶ ¶ 22, 24, 25 & 54. ATM's argument is complete out of step with the pleading requirements of F.R.C.P 8. There is no requirement that Plaintiff specifically plead details regarding the kickback claim such as the amount of money or the name of the recipient. The allegations that ATM's practice concerning settlement charges violates Section 8(a) sufficiently satisfies the notice pleading requirements. *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866 (11th Cir. 2003) (plaintiff is not obligated to set out every fact that supports a claim as the "threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is 'exceedingly low.'"); *In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir.1995) ("[F]or better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can.").

**CONCLUSION**

For all the reasons set forth above, ATM's Motion to Dismiss is due to be denied.


Respectfully submitted this 26th day of March, 2007.

        s/Kenneth J. Riemer  
KENNETH J. RIEMER(RIEMK8712)  
Attorney for Plaintiff  
P.O. Box 1206  
Mobile AL 36633  
Telephone:  (251) 432-9212  
Facsimile:  (251) 433-7172  
Email: kjr@alaconsumerlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send notification of such filing to the following: Gregory C. Cook.

        s/Kenneth J. Riemer  
KENNETH J. RIEMER(RIEMK8712)