**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ARTHUR BRIAN BOUDIN,** | ) | |
| **Individually and on behalf of all** | ) | |
| **similarly situated individuals,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NUMBER:   1:07-cv-00018-WS-C** |
| | ) | |
| **RESIDENTIAL ESSENTIALS, LLC,** | ) | **Class Action** |
| **D/B/A ATM CORPORATION OF** | ) | |
| **AMERICA, and AMERIQUEST** | ) | |
| **MORTGAGE COMPANY, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | **Jury Trial Demanded** |

## AMENDED CLASS ACTION COMPLAINT

NOW COMES the Plaintiff and as his Complaint against the above-named Defendants avers as follows:

## SUMMARY OF CLAIMS

These claims arise from a real estate loan transaction resulting in mortgage upon Plaintiff's home in Fairhope, Alabama. Specifically, Plaintiff's claims against Defendant Ameriquest Mortgage Company, Inc. ("Ameriquest") arise under the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. Plaintiff also asserts claims against Defendants Residential Essentials, LLC and ATM Corporation of America (Collectively "ATM") for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*., in connection with the "title charges" and recording fees imposed on Plaintiff in connection with this loan.  Plaintiff asserts each of his claims individually and on behalf of a class of similarly situated individuals.

## THE PARTIES

1.      Plaintiff Arthur Brian Boudin, is an individual of full age of majority and resident citizen of the State of  Alabama.

2.      Defendant Ameriquest Mortgage Company, Inc. ("Ameriquest"), is a California corporation which does business in Baldwin County, Alabama.

3.      Defendant Residential Essentials, LLC, (ATM) is, upon information and belief, a Pennsylvania corporation which does business in Baldwin County, Alabama.

## JURISDICTION

4.      This Court has subject matter jurisdiction under 15 U.S.C. §§ 1601 et seq., ("TILA" and "HOEPA") and12 U.S.C. § 1214 ("RESPA"). Venue is proper in this District in that the properties securing the plaintiff's mortgages are located herein.

## FACTUAL ALLEGATIONS

5.      On or about October 6th 2005, Plaintiff obtained a real estate mortgage loan with Defendant Ameriquest, in the amount of $77,000. Said loan was a consumer credit transaction as that term is used at 15 U.S.C. § 1635(a). Ameriquest is a residential real estate lender based in California.

6.      ATM acted as the closing agent for the Plaintiff's loan and at all relevant times acted as agent for Ameriquest.

7.      Plaintiff, as shown on his HUD-1 Settlement Statement was charged $120.00 for "recording fees." This charge is reflected on Line 1201 of the Settlement Statement. The actual cost charged by the governmental entity for recording the mortgage was only $48.

8.    Furthermore Plaintiff was required to pay at least the following charges which were *excluded* from the calculation APR and Finance Charge when said charges should have been *included* in such calculations:

> ➤ Line[1]  803 Appraisal                                        $450.00

> ➤ Line  1101 Settlement or Closing Fee               $450.00

> ➤ Line 1102 Title Search                                      $265.00

> ➤ Line 1105 Document Preparation                     $200.00

> ➤ Line 1106 Notary Fees                                      $400.00

> ➤ Line 1204 Subordination Rec. Fees                 $ 22.00

> ➤ Line 1301 Deed Recording Fees                       $ 27.00

9.    The fees above were *included* in the calculation of the Amount Financed when they should have been *excluded* from that calculation.

10.    When the fees above are properly *included* in the calculation of the Finance Charge and APR it is clear that Boudin's loan is a "High Cost" or HOEPA loan as defined by 15 U.S.C. § 1602(aa) because the loan meets the "points and fees" and/or the APR trigger for HOEPA coverage.

11.    Ameriquest was required to provide Plaintiff certain disclosures pursuant to the federal Truth in Lending Act, 15 U.S.C. § 1601 et seq., ("TILA") and its implementing regulations, 12 C.F.R Part 226 ("Reg. Z"). Under TILA and Reg. Z, Ameriquest is required to clearly and conspicuously disclose the "amount financed" and the "finance charge," among other things, in connection with each loan.

12.    Furthermore HOEPA imposes special disclosure requirements on creditors when either HOEPA trigger is satisfied. HOEPA requires a special **advance** notice (15

U.S.C. § 1639, Regulation Z § 226.32) to prospective borrowers that must be ***received*** at least three business days ***before*** closing that must contain the warnings specified in § 1639(a)(1), and since October 1, 2002, an advance disclosure of the loan's APR, Finance Charges, Amount Financed, Total of Payments and Monthly Payments. These so-called "Section 32" pre-closing notices were never sent to the plaintiff or class members. Additionally the closing documents failed to include: (a) the notice to assignees required by § 1639(d)(4) giving notice that the loan purchased is a HOEPA loan; (b) the special restriction on prepayment penalties imposed by § 1639 (c)(2)(B) prohibiting the collection of prepayment penalties in refinancings made by Ameriquest; and (c) the prohibitions in due-on-demand clauses imposed, since October 1, 2002, by Regulation Z, 226.32(d)(8).

13.     The TILA disclosures provided to the Plaintiff in connection with his loan stated the total finance charge in the amount of $190,839.03.

14.     Under TILA and Reg. Z, fees relating to abstracting and other "title charges" may be excluded from the finance charge only if such charges are *bona fide* and reasonable.  Otherwise, they are finance charges and must be disclosed as such.  See Reg. Z, § 226.4(c)(7).

15.     Under TILA, charges for fees associated with the recording of mortgages may be excluded from the computation of finance charge only if the amount is the actual amount paid to the government entity. If those charges exceed the amount actually paid to record the mortgage, then they are finance charges and must be disclosed as such. 15 U.S.C. § 1605(d).

---

[1] "Line" refers to the numbered lines on Boudins HUD-1 settlement statement filed herewith as Exhibit 1.

16.     Upon information and belief, ATM's practice is also to charge a flat rate for "recording fee" without regard to the actual cost associated with recording the mortgage instrument. As a result, ATM engages in a pattern and practice of charging fees, ostensibly for "recording fee," which are in excess of the actual amount of recording fees and retains the difference as illegal profits.

17.     The fact that the above charges were marked up, *non- bona fide,* in violation of RESPA and exceeded the costs or value of the services actually provided or performed or otherwise should have been *included* in the calculation of the Finance Charge was unknown to Plaintiff and members of the class.

18.     No additional compensable work was performed by ATM or Ameriquest in exchange for the fees charged in addition to the actual cost of the recording fee, appraisal fee and the other "title charges."

19.     The fact that those charges were marked up, illegal, excessive and otherwise improper, was unknown to, and unknowable by, Plaintiff and members of the class.

20.     Defendants were in sole possession of the information regarding the cost of the settlement services charged to borrowers, and actively misled Plaintiff and the class by disseminating fraudulent HUD-1 settlement statements that were calculated to deceive Plaintiff and the class regarding: 1) who was providing the services related to the abstracts title searches and other title or "real estate related" fees; 2) how the fee for those services was truly being allocated; 3) to whom payments for recordation of mortgages was being made; and 4) in what amounts.

21.     The fact that the charges imposed on Plaintiff and the class for "recording fees" and other fees were marked up, was unknown to, and essentially unknowable by Plaintiff and the proposed class members because Defendants' costs for the services were not available to or discoverable by Plaintiff and the proposed class members. Defendants actively deceived Plaintiff and the class about who was providing services and the fact that borrower was being charged illegal marked-up fees. The unknown and inherently unknowable nature of Defendants' unlawful charges did not give Plaintiff any reason to inquire, investigate or discover Defendants' wrongdoing. As a practical reality, it was impossible for persons closing on residential loans to detect Defendants' unlawful violations.

22.     Defendants' scheme and misconduct was, by design and in practice, inherently self-concealing. Defendants knew Plaintiff and the proposed class members could not determine whether or not the fees they were charged were marked up.

23.     Plaintiff and the proposed class members have acted with due diligence with respect to their rights. The facts that support Plaintiff's causes of action were not knowable to Plaintiff or proposed class members until shortly before the filing of the Complaint in this action.

24.     Specifically, Plaintiff reviewed all relevant loan documents and actively participated in all aspects of the loan transaction at issue but nonetheless did not discover, and could not reasonably have been expected to discover, that some of the information set forth in the HUD-1s relating to fees paid for "title examination" and "recording fees" was false and misleading as stated above.

## COUNT I
## TILA VIOLATIONS BY AMERIQUEST

25.     Plaintiff realleges all the preceding allegations referenced as if set out here in full.

26.     This count asserts claims against Defendant Ameriquest.

27.     Ameriquest is a "creditor" as that term is defined at 15 U.S.C. 1602(f).

28.     The disclosures issued by Ameriquest with respect to the Plaintiff's loan violated the requirements of TILA and Reg. Z by failing to include in the finance charge the amounts listed above. Said charges were payable by Plaintiff incident to the extension of credit and meet the definition of finance charges found at 15 U.S.C. § 1605(a) and Reg. Z § 226.18. Those amounts should have been included in the finance charge disclosed to Plaintiff.

29.     The disclosed APR was understated by more than the 1/8th of a basis point or 0.125% tolerance for error provided by Congress. As a result, the disclosed APRs were inaccurate and violated TILA and as to the Class, HOEPA at 15 U.S.C. §§ 1606(c), 1635, 1638 and 1639 and Regulation Z, at 12 C.F.R. § 226.22. Moreover, because Congress provided such error tolerances for only *innocent* mistakes they have no application to the deliberate conduct of Ameriquest. Because certain of the section 1100 title charges were improperly excluded from the calculation of the Finance Charge and should have been included in the calculation of the Finance Charge, in each and every instance the *disclosed* Finance Charge on the Plaintiff's and the Class members' loans was understated, and varied from the Actual Finance Charge by more than $100. Because the APR is a required element of the advance HOEPA notice required 3 days before closing, 15 U.S.C. § 1639(a)(2)(A), it matters not when the HOEPA or TILA pre-closing notice was delivered (if any were delivered at all) because the disclosed APR in the

notice, being identical to the under disclosed APR in the TILA Statement, rendered the notice defective as a matter of law and represented a per se violation of TILA and HOEPA notice requirements.

30.     Ameriquest should have been aware of the fraudulent conduct described above and the violations of HOEPA and TILA and should have known at all material times that the majority of the fees were not *bona fide* or were marked up.

31.     Under 15 U.S.C. § 1635(a) and 1640(c), Class Members, whose loans closed within the three-year period preceding the filing of this case, remain entitled to assert claims for rescission against any assignee or holder of their notes and mortgages. As to the Class, under 15 U.S.C. § 1641(d) and 15 U.S.C. § 1641(a), assignees are subject to all claims and defenses that the Plaintiff and Class Members have against Ameriquest. Under 15 U.S.C. § 1635(g), Plaintiff and the Class Members are also entitled to additional relief under 15 U.S.C. § 1640 not related to their rescission rights.

32.     Accordingly, as a result of (1) the **disclosed** Finance Charges being inaccurate and understated in the TILA Statements by more than $100 in every instance; (2) the **disclosed** APRs being inaccurate and understated in every TILA Statement and HOEPA notice (if any were given at all), and (3) the failure to give the required HOEPA notice to the Class, the loans violate HOEPA and TILA and the Plaintiff is entitled to rescission and damages under 15 U.S.C. §§ 1635, 1639, 1640 and 1641(a) including, all (1) actual damages; (2) statutory damages; (3) rescission rights and damages; and (5) as to the class only, for each of the five substantive HOEPA violations stated above, an amount **five times** the sum of all fees and finance charges paid by the Class, plus pre-judgment interest and attorneys' fees.

## COUNT II

### Violations of the TILA as Amended by the HOEPA for Failure to Make Timely Disclosures Required under § 1639(a) and (b).

33.     Each proceeding paragraph of this Complaint is hereby incorporated as if fully set forth herein.

34.     The loan of the Plaintiff and an undetermined number of the Class loans are "HOEPA" loans governed by the provisions of the HOEPA amendments to TILA and satisfy the definitions for HOEPA loans provided in 15 U.S.C. § 1602(aa).

35.     Ameriquest issued no HOEPA Notices; (15 U.S.C. § 1639(a) and (b)).

36.     TILA, as amended by HOEPA, at 15 U.S.C. §1639(b)(1) expressly required Ameriquest to provide certain HOEPA disclosures "not less than three business days prior to consummation of the transaction. "

37.     Section 103(y) of TILA (15 U.S.C. § 1602(y)) incorporates by reference any requirement imposed by Regulation Z promulgated by the Federal Reserve Board. Section 103(y) specifically provides: "(y) Any reference to any requirement imposed under this [TILA] title or any provision thereof includes reference to the regulation of the [Federal Reserve] Board under this title or the provision thereof in question."

38.     Regulation Z, Section 226.2 (a)(13) defines "consummation" as follows: "(13) Consummation means that time the consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13).

39.     Plaintiff and the Class Members became "contractually obligated" when they executed their notes and mortgages on the dates of their closings.

40.     Ameriquest in contravention of HOEPA at 15 U.S.C. §1639(b)(1) did not provide the required HOEPA Notice.

41.     Under 15 U.S.C. § 1640(c), certain Class Members whose loans were closed within the three-year period preceding the filing of this case are entitled to assert claims for rescission against any assignee or holder of their notes and mortgages. Under 15 U.S.C. § 1641(a) and (d) the assignees are subject to all claims and defenses that the Plaintiff and Class Members have against Ameriquest. Under 15 U.S.C. § 1635(g), Plaintiff and the Class Members are also entitled to additional relief under 15 U.S.C. § 1640 not related to their rescission rights.

42.     As a result of Ameriquest's failure to make HOEPA disclosures, the Class loans subject to HOEPA violate HOEPA and the plaintiff and the Class are entitled to damages under 15 U.S.C. §§ 1635, 1639, 1640 and 1641(d), including, all (1) actual damages; (2) statutory damages; (3) rescission rights and damages; and (4) an amount equal to five times the sum of all finance charges and fees paid as to each of Ameriquest's five substantive violations of HOEPA, plus pre-judgment interest and attorneys' fees.

### COUNT III
### VIOLATION OF RESPA SECTION 8(b)
### BY DEFENDANT ATM

43.     Plaintiff realleges all the preceding allegations referenced as if set out here in full.

44.     This count asserts a claim against Defendant ATM.

45.     Plaintiff's loan is a federally related mortgage loan within the meaning of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq.

46.     The fees above paid by the  Plaintiff in connection with his loan were charges imposed in connection with the providing of a real estate settlement service within the meaning of 12 U.S.C. §§ 2602(3) and 2607(b), as well as 24 C.F.R. § 3500.2(b).

47.     Many of the fees listed above were marked up in violation of 12 U.S.C. § 2607(b), therefore, the charges, or a portion thereof, constituted charges for "other than services actually performed" within the meaning of 12 U.S.C. § 2607(b).

48.     The $120 "recording fee" charge was in excess of the actual amount of the recording fee paid to the recording office and, therefore, constituted a charge other than a fee for services actually performed within the meaning of 12 U.S.C. § 2607(b).

49.     ATM violated 12 U.S.C. § 2607(b) and related federal regulations and interpretations, by giving and/or accepting a portion of charges made or received for a real estate settlement service other than for services actually rendered.

50.     In connection with Plaintiff's loan, ATM did accept a portion, split or percentage of a charge other than for services actually performed.

## CLASS CLAIMS

### A.  INTRODUCTION

51.     In addition to the individual claims asserted in the foregoing paragraphs, Plaintiff, on behalf of borrowers similarly situated, brings the following class claims against ATM arising from the marking up and splitting of recording and title fees in violation of RESPA. Because the fees charged to Plaintiff and similarly situated borrowers also constitute violations of TILA, to the extent those charges were not

disclosed as finance charges, Plaintiff asserts claims on behalf of a class of similarly situated borrowers for TILA and HOEPA violations against defendant Ameriquest.

## C.   CLASS ALLEGATIONS - RESPA VIOLATIONS

52.   Plaintiff realleges all the preceding allegations by reference as if set out here in full.

53.   The identities of the class members are readily identifiable through computer records and paper records, regularly maintained in Defendants' course of business.

54.   The Class is so numerous as to make it impracticable to bring all members of the Class before the Court. It is believed that the Class includes thousands of members. In some instances, such persons may be unaware that claims exist on their behalf. To the extent that Class members have knowledge of their claims, their damages are in such amounts that when taken individually, they may be too small to justify the expense of a separate lawsuit.

55.   The representative Plaintiff's claims are typical of, if not identical to, the claims of the Class. Plaintiff was charged an amount for settlement services which included the same excessive, unearned and illegal fees imposed upon each and every Class member in connection with "real estate related" charges and "recording fee" charges charged by Defendant ATM.

56.   The representative Plaintiff will fairly and adequately represent the members of the Class and has no interests which are antagonistic to the claims of the Class. Each Plaintiffs' interest in this action is antagonistic to the interest of the Defendants, and each will vigorously pursue the claim of the Class.

57.    The representative Plaintiff has retained counsel who are competent and experienced in consumer fraud class action litigation, and have successfully represented consumers in complex class actions.

58.    Common questions of law and fact impact the rights of each member of the Class and a common remedy by way of permissible damages and declaratory relief is sought for the Class.

59.    There are numerous and substantial questions of law and fact common to all members of the Class which will control in this litigation and which will predominate over any so-called individual issues.  These common questions of law and fact include, but are not limited to, the following:

   a)    Did Defendant ATM mark-up the costs of settlement services, recording fees and/or title services without providing actual, necessary, and distinct services in violation of RESPA?

   b)    What measure of damages is appropriate?

   c)    What declaratory or injunctive relief is appropriate?

60.    A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy. The substantive claims of the representative Plaintiff and the class are identical and will require evidentiary proof of the same kind and application of the same law.

61.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually. Trial of Plaintiff's claims is manageable. Unless a

class is certified, ATM will retain excessive and unearned fees improperly accepted from class members.

62.      Unless a class-wide injunction is issued, ATM may continue to commit violations against residential mortgage borrowers.

## COUNT IV
## CLASS CLAIM FOR VIOLATIONS OF RESPA  - SECTION 8(b)

63.      Plaintiff realleges all the preceding allegations by reference as if set out here in full.

64.      Plaintiff asserts the relevant allegations above on behalf of the class of similarly situated borrowers as described above.

WHEREFORE, Plaintiff for himself and on behalf of the class of borrowers described  above, demands judgment be entered against ATM and the following relief:

A)      An order certifying that this action may be maintained as a class action, as defined above, under Fed.R.Civ.R. 23(a) and 23(b)(3);

B)      An order appointing Plaintiff as representative of the class;

C)      An order appointing the undersigned counsel as class counsel pursuant to Fed.R.Civ.R. 23;

D)      An order directing that reasonable notice of the class action be provided to all members of the class at the appropriate time;

E)      For violating RESPA, an order and judgment finding that the ATM is liable as a matter of law to each member of the class for treble damages as provided pursuant to 12 U.S.C. § 2607(d)(2);

F)   Declaratory and injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein;

G)   An award of reasonable attorneys' fees as provided by law and statute;

H)   An award of pre-and-post judgment interest as provided by law in an amount according to proof at trial;

I)   All other relief to which they are entitled but not specifically described herein;

J)   An award of costs and expenses incurred in this action; and

K)   An award for such other relief as the court may deem just and proper.

### E.   CLASS ALLEGATIONS - TILA VIOLATIONS

65.   Plaintiff realleges all the preceding allegations by reference as if set out here in full.

66.   The identities of the class members are readily identifiable through computer records and paper records, regularly maintained in Defendants' course of business.

67.   The Class is so numerous as to make it impracticable to bring all members of the Class before the Court.  It is believed that the Class includes thousands of members.  In some instances, such persons may be unaware that claims exist on their behalf.  To the extent that Class members have knowledge of their claims, their damages are in such amounts that when taken individually, they may be too small to justify the expense of a separate lawsuit.

68.     The representative Plaintiff's claims are typical of, if not identical to, the claims of the Class.  Plaintiff was charged an amount for settlement services which included the same excessive, unearned and illegal fees imposed upon each and every Class member in connection with title insurance premiums paid.

69.     The representative Plaintiff will fairly and adequately represent the members of the Class and has no interests which are antagonistic to the claims of the Class.  THe Plaintiff is aware that he cannot settle this action without Court approval. The Plaintiff's interest in this action is antagonistic to the interest of the Defendant, and each will vigorously pursue the claim of the Class.

70.     The representative Plaintiff has retained counsel who are competent and experienced in consumer fraud class action litigation, and have successfully represented consumers in complex class actions. Counsel have agreed to handle this case on a contingent basis, with their compensation for professional services only as awarded by the Court.

71.     Common questions of law and fact impact the rights of each member of the Class and a common remedy by way of permissible damages and declaratory relief is sought for the Class.

72.     There are numerous and substantial questions of law and fact common to all members of the Class which will control in this litigation and which will predominate over any so-called individual issues.  These common questions of law and fact include:

a)      Were the charges imposed for "title charges" and for "recording fees" finance charges within the meaning of TILA and its implementing regulations;

b)      If so, did Defendant Ameriquest fail to properly disclose either of those charges as a finance charge;

c)      Is the TILA violation apparent on the face of the loan documents;

d)      Are the loans subject to HOEPA;

e)      What measure of damages is appropriate;

f)      What declaratory or injunctive relief is appropriate?

73.     A class action provides a fair and efficient method, if not the only method, for adjudicating this controversy.  The substantive claims of the representative Plaintiff and the class are identical and will require evidentiary proof of the same kind and application of the same law.

74.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because class members number in the thousands and individual joinder is impracticable. The expense and burden of individual litigation would make it impracticable or impossible for proposed class members to prosecute their claims individually. Trial of Plaintiff's claims is manageable.

75.     Unless a class-wide injunction is issued, Defendant may continue to commit violations against residential mortgage borrowers.

76.     The representative Plaintiff will seek to identify all class members through discovery as may be appropriate and will provide to the class such notice of this action as the Court may direct.

## COUNT V DECLARATORY JUDGMENT

118.    Plaintiffs re-allege and adopt by reference all of the foregoing facts and allegations as set forth herein above.

119.    Plaintiff and the Plaintiffs' Class bring this action pursuant to Rules

23(b)(2) and 57 of the Federal Rules of Civil Procedure in that an actual controversy exists between the parties concerning their right to rescind their mortgage loans under 15 U.S.C. § 1635.

120.   As a result of the Defendants' aforesaid violations of TILA and HOEPA all Plaintiffs and Class Members have retained their right to rescind (as to loans that closed within three years *prior* to the filing of this complaint and as to properties not sold during such period) their loans under 15 U.S.C. § 1635. Accordingly, Plaintiffs and Class Members pray for a declaratory judgment recognizing and authorizing rescission by Plaintiffs and Class Members, this declaratory judgment count giving notice to all Defendants of all Plaintiff's and Class Members' demands for rescission, subject to the individual choice of withdrawing this notice of rescission after their rights are declared.

## Prayer for Relief

WHEREFORE, on all asserted causes of action against Defendants, Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, as follows:

(a)   For an Order certifying that this action may be maintained as class action as under Fed. R. Civ. P. 23(b)(3);

(b)   For an Order appointing the Plaintiff to act as representatives of the Class;

(c)   For an Order appointing the undersigned counsel to act as interim Class Counsel pursuant to Fed. R. Civ. P. 23 to act on behalf of the putative Class before the determination of whether to certify the Class under Fed. R. Civ. P. 23(b)(3) is made;

(d)      For an Order appointing the undersigned counsel as Class Counsel;

(e)      For an Order directing that reasonable notice of this Class action be given to all members of the Class at the appropriate time after discovery and dispositive motions have been resolved;

(f)      For violating RESPA, an Order finding that the Defendant ATM liable as a matter of law to each member of the Class for treble damages; prejudgment interest and attorney fees;

(g)      For violating the HOEPA and TILA, a declaration that Class Members whose loans were closed, within the three-year preceding the filing of this case, remain entitled to rescind their loans and by this complaint have given notice of rescission subject to withdrawal of same after determination of their rights, and that Ameriquest be prohibited from foreclosing on the Plaintiffs' and Class Members' mortgages pending such declaration;

(h)      For violating the HOEPA requirements of 15 U.S.C. §§ 1635, 1638, and 1639, an Order finding Ameriquest liable as a matter of law, pursuant to §§ 1640 and 1641(d), and for all damages and declaratory and injunctive relief allowable under 15 U.S.C. §§ 1635, 1639, 1640 and 1641(d), including, all (1) actual damages; (2) statutory damages; (3) rescission rights and damages; and (5) an amount equal to five times the sum of all, finance charges and fees paid by the Class Members for five substantive violations of HOEPA, one disclosure violation under TILA,; plus pre-judgment interest; and attorney fees;

(i)      For violating the TILA's disclosure requirements an Order finding that

Defendants are jointly and severally liable as a matter of law, pursuant to §§ 1640 and 1641(a), to the Plaintiff and Class Members for all damages and declaratory and injunctive relief allowable under 15 U.S.C. §§ 1635, 1640 and 1641(a), including, all (1) actual damages; (2) statutory damages; (3) rescission rights and damages; plus prejudgment interest and attorneys fees;

(j)     For violations of the above laws a finding of assignee liability under the provisions of HOEPA and TILA pursuant to §§ 1641(d) and 1641(a);

(k)     For a permanent injunction enjoining Defendants, together with their officers, directors, employees, agents, partners or representatives, successors and any and all persons acting in concert with them or by agreement with them from directly or indirectly engaging in the wrongful acts and practices described above, all for the benefit of the Class Members; and

(l)     For an order directing disgorgement or restitution against Defendants as to each Class Member and the imposition of an equitable constructive trust over such amounts for the benefit of the Class Members; and

(m)     A judgment of monetary damages against Defendants and each of them as to Plaintiff for not only such prohibited or excess fees, but for all interest that has been contracted for or charged or paid by each of the Class Members, through the date of judgment or settlement and the value of such interest that is due and owing in the future; and

(n)     For a judgment of punitive damages against the Defendants in a sum that is fair and reasonable; and

(o)     For reasonable attorneys' fees as provided by law and statute; and

(p)     For pre-and-post judgment interest as provided by law in amount according to proof at trial; and

(q)     For an award of costs and expenses incurred in this action; and

(r)     For such other and further relief as the Court may deem necessary and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

/s Earl P. Underwood, Jr.
EARL P. UNDERWOOD, JR. (UNDEE6591)
One of the Attorneys for Plaintiff
Law Offices of Earl P. Underwood, Jr.
Post Office Box 969
Fairhope, Alabama 36533
Telephone:     (251)   990-5558
Facsimile:     (251)   990-0626

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 4th, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the counsel of record

Gregory C. Cook                          7133 Stone Dr.
Balch & Bingham, LLP                     Daphne AL 36526
1710 Sixth Ave. N.                       gri@sgclaw.com
Post Office Box 306
Birmingham, AL 35201-0306
                                         Kenneth J. Riemer
                                         166 Government Street, Suite 100
George R. Irvine, III                    Mobile, AL 36602
Stone, Grenade & Crosby, P.C.            kjr@alaconsumerlaw.com

s/ Earl P. Underwood, Jr.