IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ARTHUR BRIAN BOUDIN, etc.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 07-0018-WS-C |
| ) | |
| **RESIDENTIAL ESSENTIALS, LLC,** ) | |
| etc., et al., ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

This matter is before the Court on a motion to dismiss and renewed motion to dismiss filed by defendant Residential Essentials, LLC ("ATM"). (Docs. 10, 27). The parties have filed briefs in support of their respective positions, (Docs. 10, 17, 18, 27, 33, 39), and the motions are ripe for resolution. After carefully considering the foregoing and other relevant materials in the file, the Court concludes that the motions to dismiss are due to be granted in part and denied in part.

## BACKGROUND

The plaintiff originally sued only ATM. After ATM's motion to dismiss was fully briefed, the plaintiff amended his complaint as of right, modifying some of his allegations against ATM and adding Ameriquest Mortgage Company ("Ameriquest") as a defendant. In response to the amended complaint, ATM filed a renewed motion to dismiss.

According to the amended complaint, (Doc. 22), the plaintiff obtained a residential mortgage from Ameriquest, with ATM acting as closing agent. The HUD-1 settlement statement ("HUD-1") reflects a charge of $120 for "recording fees: mortgage," but the actual recording fee charged by the Probate Court of Baldwin County was $48, with ATM retaining the difference. The amended complaint alleges that ATM's conduct

violated Section 8(b) of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607(b).[1]

ATM argues that the plaintiff has failed to state a claim under RESPA and that, in any event, his claim is barred by the statute of limitations and not rescued by equitable tolling.

## DISCUSSION

"When considering a motion to dismiss, all facts set forth in the plaintiff's complaint are to be accepted as true and the court limits its consideration to the pleadings and the exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (internal quotes omitted).

**I. Section 8(b) - Recording Charge.**

Section 8(b) provides as follows:

> (b) <u>Splitting Charges</u>. No person shall give and *no person shall accept any portion*, split, or percentage *of any charge* made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan *other than for services actually performed*.

12 U.S.C. § 2607(b) (emphasis added).

Among the requirements for pleading a claim under Section 8(b) is "an allegation that the portion of the charge that [the defendant] retained was accepted 'other than for services actually performed,' i.e., that [the defendant] performed no services that would justify its retention of a portion of the fee." *Sosa v. Chase Manhattan Mortgage Corp.*,

---

[1]The amended complaint omits, and thus abandons, a claim under 12 U.S.C. § 2607(a) that was asserted in the original complaint. (Doc. 1 at 12).
    The amended complaint includes a class claim under Section 8(b). (Doc. 22 at 14-15). Because ATM does not separately challenge the class claim, it is not addressed herein.

348 F.3d 979, 983 (11th Cir. 2003).  ATM argues that the plaintiff has made no such allegation.  (Doc. 10 at 3-4).  The amended complaint, however, expressly alleges that "[n]o additional compensable work was performed by ATM ... in exchange for the fees charged in addition to the actual cost of the recording fee ...."  (Doc. 22, ¶ 18).  This allegation — that ATM performed no services to justify its receipt of more than the $48 paid to the probate court — comfortably satisfies *Sosa*.

ATM appears to argue that *Sosa* precludes the plaintiff from properly alleging that it provided no services justifying its retention of a portion of the fee.  (Doc. 10 at 2-6).  In *Sosa*, the defendant charged the plaintiff $50 for courier/messenger services, paid the delivery service a portion of the charge, and retained the remainder.  348 F.3d at 981.  The Court found it "impossible to say that [the defendant] performed no services for which its retention of a portion of the fees at issue was justified," because it was "undisputed ... that [the defendant] arranged to have items delivered to complete the closing," and the defendant "benefitted the borrowers by arranging for third party contractors to perform the deliveries."  *Id*. at 983-84.

Assuming without deciding that this portion of *Sosa* represents an alternate holding rather than dicta, it does not apply here.  An essential predicate for the *Sosa* ruling was that the defendant's act of arranging for services to be performed by others was "undisputed."  ATM alleges in brief that it arranged for recording the mortgage and so performed a service within the contemplation of *Sosa* and Section 8(b).  (Doc. 10 at 5).  That assertion is not, as ATM apparently believes, (Doc. 18 at 3), "undisputed" simply because not contradicted by the plaintiff in his briefs; since this matter is before the Court on motion to dismiss for failure to state a claim, the plaintiff was not required to challenge ATM's assertion on pain of dismissal.

The *Sosa* Court's conclusion that the defendant's arrangement for courier services was undisputed is unexplained but presumably based on an express admission by the plaintiff.  ATM suggests that the original complaint contains just such an express

admission.  (Doc. 10 at 4-5).  It bases this argument on the following snippets:

- ATM "is in the business of providing settlement services";
- As part of the closing process, ATM "is requested by the lenders as a matter of course to perform certain settlement services with respect to each borrower";
- ATM "as a matter of course obtains settlement services from third party providers";
- ATM claims to "provide clients with a single-point outsource management company for all settlement services needs."

(Doc. 1, ¶¶ 1, 15-16).  Without any analysis, ATM concludes that the plaintiff through these quotes admits that ATM arranged for the recording of the plaintiff's mortgage. All the quoted material alleges, however, is that ATM is in the business of providing settlement services and that it ordinarily provides such services through third parties.  It cannot reasonably be read as an admission that ATM provided services specifically with respect to recording the plaintiff's mortgage.

Even could the quoted language support the construction ATM places on it, the plaintiff has filed an amended complaint, thereby superseding the original.  *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006).[2]  "A superseded pleading is of course not a conclusive admission of the statements made therein ...." *Borel v. United States Casualty Co.*, 233 F.2d 385, 387 (5th Cir. 1956).  While a superseded pleading can still be considered along with other evidence, *id*. at 387-88, the other evidence in this case includes the amended complaint, which both deletes the quoted language and explicitly alleges that ATM provided no services in connection with recording the mortgage.  These modifications negate the possibility of an admission

---

[2]While the original pleading remains in play if the amended pleading "refers to or adopts" it, *Varnes v. Local 91, Glass Bottle Blowers Association*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982), the amended complaint here does not do so.

favorable to ATM.[3]

ATM next attempts to cast the plaintiff's claim as one for an "overcharge," of the sort recently rejected by this Court in *Morrisette v. Novastar Home Mortgage, Inc.*, 484 F. Supp. 2d 1227 (S.D. Ala. 2007).  (Doc. 27 at 4-5).  The plaintiff counters that he is complaining of a "markup."  (Doc. 17 at 9).

In *Morrisette*, on which ATM relies, the Court defined a "markup" as occurring "'when the provider outsources the task of providing the service to a third-party vendor, pays the vendor a fee for the service, and then, *without providing an additional service*, charges homeowners seeking mortgages a higher fee for the settlement service than that which the provider paid to the third-party vendor.'" 484 F. Supp. 2d at 1229 (quoting *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 53 (2nd Cir. 2004) (emphasis added).  An "overcharge" was defined as "'aris[ing] out of settlement services provided by the lender itself but charged to consumers seeking home mortgages for substantially more than the provider's cost.'" *Id*. (quoting *Kruse*, 383 F.3d at 53).

As noted, the amended complaint expressly alleges that "[n]o additional compensable work was performed by ATM ... in exchange for the fees charged in addition to the actual cost of the recording fee ...."  (Doc. 22, ¶ 18).  On its face, this language alleges a markup: ATM paid the probate court $48 to record the mortgage but charged the plaintiff $120 "without providing an additional service."[4]

---

[3]The only language in the amended complaint that ATM identifies as forming an admission that it arranged for the recording of the mortgage is the allegation that ATM "acted as the closing agent."  (Doc. 27 at 6; Doc. 22, ¶ 6).  This bland assertion merely identifies ATM's status in relation to the closing; it scarcely admits that ATM performed services with respect to recording the mortgage, and any such tendency would be overwhelmed by the explicit allegation that ATM did not do so.

[4]ATM believes that the amended complaint's usage of the adjective "additional " represents a concession that ATM did provide some service in connection with recording the mortgage.  (Doc. 27 at 5).  It plainly does not; both *Morrisette* and the amended complaint make clear that the failure to provide additional service is a failure to provide

-5-

In sum, the plaintiff's Section 8(b) claim with respect to the mortgage recording fee states a claim upon which relief can be granted. The apparent unlikelihood that the plaintiff can actually establish that ATM performed "no services that would justify its retention of a portion of the fee" cannot change this conclusion. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) ("[A] well-pleaded complaint may proceed even if it appears that a recovery is very remote and unlikely.") (internal quotes omitted).

## II.  Section 8(b) - Other Charges.

The mortgage recording fee is plainly the focus of the amended complaint with respect to ATM, being mentioned at least eleven times and being made expressly part of the RESPA count. (Doc. 22, ¶¶ 1, 7, 16, 18, 20, 21, 24, 48, 51, 55, 59). There are, however, fleeting references to other charges as well, specific and generic. These culminate in the following allegation contained within the RESPA count: "Many of the fees listed above were marked up in violation of 12 U.S.C. § 2607(b), therefore, the charges, or a portion thereof, constituted charges for 'other than services actually performed' within the meaning of 12 U.S.C. § 2607(b)." (*Id*., ¶ 47). ATM argues that the plaintiff has not adequately pleaded a cause of action with respect to any charge other than the mortgage recording fee, (Doc. 27 at 6-8), and the plaintiff offers no response.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citations omitted], a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citations omitted].

---

service in addition to services provided by the third party, not in addition to previous services provided by the defendant.

    ATM's throwaway suggestion that there can be no markup when the third party providing a service is a governmental entity rather than a private concern, (Doc. 27 at 4 n.3), slices too finely; in either case, the defendant pads another's bill without providing additional services.

Factual allegations must be enough to raise a right to relief above the speculative level ....." *Twombly*, 127 S. Ct. at 1964-65.  Paragraph 47 does not satisfy Rule 8(a)(2) or *Twombly* because it includes no factual material but merely attempts a formulaic recitation of elements.  The question becomes whether earlier allegations supply the deficiency.[5]

The HUD-1 includes over a dozen entries concerning ATM.  The threshold problem with paragraph 47 is its failure to identify which of these are included in the phrase, "[m]any of the fees listed above."  As it turns out, the only such fee "listed above" with respect to ATM is "abstracts [sic] title searches," (Doc. 22, ¶ 20),[6] for which ATM charged $265.  (*Id.*, Exhibit 1).[7]  Thus, only that charge is put in play by paragraph 47.  The only allegation about the abstract/title search, however, is that the defendants misled the plaintiff by disseminating a fraudulent HUD-1 that was calculated to deceive him concerning who was providing the service and how the fee for it was being allocated.  (*Id.*).  What remains missing are allegations that the abstract/title search was performed by a third party, that the third party charged ATM (and ATM paid) less than $265, and

---

[5]Following the RESPA count, the amended complaint includes certain nebulous allegations concerning charges by ATM for purposes of a class claim.  (Doc. 22 at 11-15).  These allegations are irrelevant to the plaintiff's individual claim, because the individual claim does not purport to incorporate them.  At any rate, they are too vague to rescue the individual claim even were they incorporated therein.

[6]The amended complaint mentions an "appraisal fee," (*id.*, ¶ 18), but this was a charge by Ameriquest.  (*Id.*, Exhibit 1).  The amended complaint mentions a "settlement or closing fee," "title search," "document preparation," "notary fees," "subordination rec. fees," and "deed recording fees," but they are listed for the purpose of showing that Ameriquest violated the Truth in Lending Act.  (*Id.*, ¶¶ 8-10).

[7]The amended complaint also mentions a fee for "title examination," (Doc. 22, ¶ 24), but the HUD-1 shows that the plaintiff was not charged for a title examination.  Moreover, and as with abstract/title searches, the amended complaint fails to make the necessary allegations to support a Section 8(b) claim concerning title examination fees.

that ATM provided no additional services justifying its retention of the difference.[8]

In sum, to the extent the plaintiff attempts to challenge charges other than the mortgage recording fee, his inadequate pleading shows that he has failed to state a claim upon which relief can be granted.

### III. Equitable Tolling.

"Any action pursuant to the provisions of section ... 2607 ... of this title may be brought ... within ... 1 year ... from the date of the occurrence of the violation ...." 12 U.S.C. § 2614. The parties agree that the statute begins to run on the date of closing. (Doc 10 at 7; Doc. 17 at 9).[9] Closing occurred on or about October 6, 2005, (Doc. 22, ¶ 5), more than a year before the plaintiff filed suit on January 6, 2007. (Doc. 1). To avoid the statutory bar, the plaintiff invokes equitable tolling.

ATM first argues that equitable tolling is unavailable under Section 2614. (Doc. 10 at 8-9). The weight of authority appears to the contrary[10] but, absent a controlling case, the Court looks to more general principles. "Unless Congress states otherwise, equitable tolling should be read into every federal statute of limitations." *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *accord Young v. United*

---

[8]Paragraph 47's use of the phrase "marked up" cannot substitute for these allegations, given that the plaintiff used the term in the generic sense of "[a]n amount originally added to cost [or] an increase above an originally established retail price." (Doc. 17 at 2 n.1).

[9]This is in accord with the conclusion of the Fifth Circuit in *Snow v. First American Title Insurance Co.*, 332 F.3d 356, 359 (5th Cir. 2003).

[10]*Compare Lawyers Title Insurance Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166 (7th Cir. 1997) (equitable tolling applies); *Mullinax v. Radian Guaranty, Inc.*, 199 F. Supp. 2d 311, 328 (M.D.N.C. 2002) (same); *Pedraza v. United Guaranty Corp.*, 114 F. Supp. 2d 1347, 1353 (N.D. Ga. 2000) (same); *Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787, 793-96 (D. Md. 1998) (same); *Moll v. United States Life Title Insurance Co.*, 700 F. Supp. 1284, 1286-89 (S.D.N.Y. 1988) (same) *with Hardin v. City Title & Escrow Co.*, 797 F.2d 1037, 1038 (D.C. Cir. 1986) (equitable tolling does not apply).

*States*, 535 U.S. 43, 49 (2002). In *Ellis*, the Court held that the statute of limitations governing actions under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1640(e), is subject to equitable tolling, given that TILA is a remedial statute designed to protect consumers against fraud and that it would be anomalous to reward defendants who disguise their fraud for a year. 160 F.3d at 707-08.

The reasoning of *Ellis* compels a similar result here. First, both RESPA and TILA are "consumer protection statute[s]." *Hardy v. Regions Mortgage, Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006); *Ellis*, 160 F.3d at 707. Second, the remedial purpose of RESPA is at least as clear as under TILA. *Compare* 12 U.S.C. § 2601(a) ("[S]ignificant reforms in the real estate settlement process are needed to insure that consumers ... are provided with greater and more timely information ... and are protected from unnecessarily high settlement charges caused by certain abusive practices ....") *with* 15 U.S.C. § 1601(a) ("It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."), *quoted in Ellis*, 160 F.3d at 708. Thus, as under TILA, excluding equitable tolling under RESPA "would lead to the anomalous result that a statute designed to remediate the effects of fraud would instead reward those perpetrators who concealed their fraud long enough to time-bar their victims' remedy." *Id*. Accordingly, the Court concludes that equitable tolling is available under RESPA.[11]

ATM next argues that the conduct underlying equitable tolling is a species of fraud

---

[11]The only court known to have held that Section 2614 is jurisdictional and thus not amenable to equitable tolling relied on the language of the provision, noting that it is "identical in all material respects" to TILA's limitations provision, including the heading of "jurisdiction of courts; limitations [on actions]." *Hardin*, 797 F.2d at 1039. Because the Eleventh Circuit has held that TILA's provision *is* subject to equitable tolling, the substantive identity of RESPA's provision weighs in favor of, not against, equitable tolling.

that must be pleaded with the particularity required by Rule 9(b).  (Doc. 10 at 9). Assuming for present purposes that this a correct statement of law (ATM cites a single district court for the proposition), the amended complaint meets the standard.

ATM urges the Court to apply the test articulated in *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350 (11th Cir. 2006), in which the Court stated that "[p]articularity means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them."  *Id*. at 1357 (internal quotes omitted).  The amended complaint alleges that ATM misled the plaintiff by disseminating a HUD-1 that misrepresented that the probate court's cost to record the mortgage was the full $120 charge, when in fact it charged only $48, with ATM pocketing the remainder.  (Doc. 22, ¶¶ 7, 16, 20).  The HUD-1 is distributed as part of closing, which satisfies the temporal and locational requirements.

ATM next argues that the plaintiff must also satisfy a more pointed Rule 9(b) inquiry specific to claims of equitable tolling, including facts supporting allegations "that (1) the defendant engaged in a course of conduct designed to conceal evidence of his alleged wrongdoing; (2) the plaintiff was not on actual or constructive notice of that evidence; and (3) the plaintiff exercised due diligence; viz., the plaintiff did not 'sleep on her rights.'"  (Doc. 18 at 7 (quoting *Pedraza v. United Guaranty Corp*., 114 F. Supp. 2d 1347, 1358 (S.D. Ga. 2000))).  Once again, the amended complaint meets this mark, assuming for the moment that it correctly captures controlling law.

The key is the HUD-1, which is made a part of the amended complaint, and which the plaintiff alleges was "calculated to deceive" him concerning the distribution of the $120 mortgage recording fee.  (Doc. 22, ¶ 20).  On eleven different lines, the title charge is listed, followed by the words, "to ATM Corporation of America."   Thus, for example, line 1113 reads, "Courier Fee to ATM Corporation of America - 30.00."  Line 1201, in contrast, reads, "Recording Fees: Mortgage $120.00," with no mention of ATM.  A

-10-

reasonable construction of the HUD-1 is that ATM designed its selective use of the "to ATM Corporation of America" language to conceal evidence of its alleged improper retention of $72 of the mortgage recording fee. The amended complaint alleges that the plaintiff was not on notice of ATM's wrongdoing, and it asserts that he exercised due diligence in that he reviewed the HUD-1 and other relevant loan documents and actively participated in all aspects of the loan transaction. (Doc. 22, ¶¶ 19, 23-24).

ATM insists that these plain, factually supported allegations are nevertheless inadequate because the probate court's recording charge is a matter of public record, thereby placing on the plaintiff the burden of pleading facts explaining how ATM concealed a public record, how he exercised due diligence to discover the public record, and how he can avoid being charged with constructive knowledge of its contents. (Doc. 18 at 7; Doc. 27 at 10). The threshold problem with this argument is its assumption that the public availability of recording fees is "undisputed." (Doc. 10 at 10). The point is not alleged in the amended complaint, and ATM has not invoked, much less established, the applicability of judicial notice. Thus, on this motion to dismiss the plaintiff has not been put to the test of disputing ATM's assertion. At any rate, the factual allegations already discussed dispose of ATM's argument; the HUD-1 was not merely silent as to the allocation of the $120, it was affirmatively misleading that the entire $120 represented the probate court's charge. Without argument or authority to the contrary — and ATM offers none — these allegations satisfactorily plead around the public availability of the probate court's recording fee.

ATM's present "public record" argument is the successor to one made in its first brief but in none of the three filed since: that, as a matter of law, the public availability of probate court recording charges defeats equitable tolling. (Doc. 10 at 10). The fatal defects in this argument mirror those above. First, it is not undisputed for purposes of this motion that the recording charges are publicly available. Second, ATM offers no argument or authority for the proposition that such availability necessarily dooms the

plaintiff's claim.

## CONCLUSION

For the reasons set forth above, ATM's motion to dismiss and renewed motion to dismiss are **granted** to the extent that the amended complaint attempts to challenge charges other than the mortgage recording fee. All such claims are **dismissed**. In all other respects, the motion to dismiss and renewed motion to dismiss are **denied**.

DONE and ORDERED this 10th day of July, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE